# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Marvel Entertainment, LLC,

    Plaintiff,

v.

Stephen Kimble,

    Defendant.

CV 10-792-TUC-DCB

**ORDER**

    This case is related to two other federal district court cases, CV 97-557 TUC RCC and CV 08-372 TUC DCB. The story began a long time ago, but ends by this Order granting summary judgment for Plaintiff Marvel Entertainment (Marvel) on its claim for declaratory judgment. The Court denies Defendant Kimble's cross motion for summary judgment.

## A.
## Background and Litigation History

    Kimble invented a web shooting toy, described in U.S. Patent No. 5,072,856. (R&R at 3.) In 1990, he met with Toy Biz, predecessor of Marvel Entertainment, and discussed his patent application and related ideas. Toy Biz agreed to not use the ideas disclosed by Kimble without first negotiating a reasonable royalty payment for their use. Subsequently, Toy Biz made and sold a "Web Blaster" toy, which is a role-play toy that allows the user to adopt aspects of Marvel's Spider-Man character by shooting foam string. (CV 08-372 TUC DCB (Doc. 77): R&R at 3-4.)

    In 1997, Kimble sued Toy Biz in CV 97-557 TUC RCC, alleging patent infringement and breach of contract based on an alleged oral agreement. The patent claim was resolved against Kimble on summary judgment. Kimble prevailed at trial on his claim for breach of

the oral agreement and Judgment was entered finding that the Web Blaster toy was covered by the verbal agreement, and Kimble was awarded "full damages to be 3.5% of net product sales, past, present and future excluding refill royalties." Both parties appealed. *Id.*

While the case was on appeal, the parties entered a Settlement Agreement on September 21, 2001, which involved vacating the Judgment entered in CV 97-557 TUC RCC and the following:

> 3. Marvel agrees to purchase from the Patent Holders and the Patent Holders agree to sell to Marvel the Patent which will be evidenced by an instrument of assignment in the form of exhibit C hereto. The purchase price for the Patent shall be payable to the Patent Holders as follows:
>
> a.   $516,214.62 upon execution and delivery of this Agreement; and
>
> b.   3% of "net product sales" (as such term is used in the Judgment) excluding refill royalties made after December 31, 2000. For purposes of this paragraph 3.b, "net product sales" shall be deemed to include product sales that would infringe the Patent but for the purchase and sale thereof pursuant to this Agreement as well as sales of the Web Blaster product that was the subject of the Action and to which the Judgment refers.

*Id.* at 4.

The Agreement contained no expiration date, and Toy Biz and then Marvel paid royalties and all went well until 2006, when Marvel entered into a licensing agreement with Hasbro, giving Hasbro copyright and trademark rights for Marvel characters, including role-play toys. Hasbro began making versions of the Web Blaster in 2007. Hasbro refused to sign a sublicensing agreement with Marvel that would have required Hasbro to pay Kimble royalties under the Kimble-Agreement. Nevertheless, Marvel continued to pay royalties on various Web Blaster products, including Web Blaster kits with Extra Value items. In 2008, however, Marvel informed Kimble that he was not entitled to royalties on Extra Value Items and Marvel recalculated the 2007 royalties and determined it had overpaid Kimble by $282,700.00. *Id.* at 4-5.

In 2008, Kimble sued Marvel in CV 08-372 TUC DCB. Marvel argued that the royalty provision in the 2001 Settlement Agreement was unenforceable after the patent expiration date of May 25, 2010. This Court considered the seminal case on the issue, *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1965), which held that "a patentee's use of a royalty agreement that

projects beyond the expiration date of the patent is unlawful *per se.* In *Brulotte* the terms of a licensing agreement were the same both before and after expiration of the patent, therefore, the Court was "unable to conjecture what the bargaining position of the parties might have been and what resultant arrangement might have emerged had the provision for post-expiration royalties been divorced from the patent and nowise subject to its leverage." *Id.* at 32.

Subsequent to *Brulotte*, in *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 259 (1979), the Court distinguished a contract that provided a 5% royalty for an item in an inventor's pending patent and a 2 ½ % royalty if the patent application was not allowed within 5 years. The Court reasoned, the reduced royalty was negotiated for the purpose of compensation in the absence of a patent, therefore, it did not offend the *Brulotte*-holding that it is unlawful to leverage a patent monopoly beyond its expiration. *Aronson*, 440 U.S. at 265.

The 2008 case filed by Kimble was referred to a magistrate judge, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1), with the magistrate judge overseeing discovery, hearing six dispositive motions, and issuing a Report and Recommendation to this Court regarding the motions. Relevant to the case at hand, were the crossmotions by the parties as to whether or not Marvel owed royalties under the Settlement Agreement after the patent expiration date. Kimble argued royalties were due as long as Marvel receives revenue for Web Blaster sales. Marvel argued that all Web Blaster related royalties end after the patent expires.

The magistrate judge examined the Settlement Agreement and found, contrary to both parties' interpretation that the Settlement Agreement transferred "the patent rights <u>and</u> the rights to the toy idea(s) verbally exchanged between Kimble and Toy Biz in 1990," (CV 08-372 TUC DCB (Doc. 77): R&R at 8), that the Settlement Agreement did not transfer the non-patent rights and reserved to Kimble the non-patent rights derived from the verbal agreement. Therefore, the magistrate judge concluded that the Settlement Agreement clearly relied on the patent and did not have separate provisions for non-patent rights. Necessarily, "because the Agreement is premised on a patent, *Bruelotte* controls and the royalty cannot

- 3 -

extend beyond the life of the patent." *Id.* Noting, however, that the parties disagreed with his interpretation of the Settlement Agreement, the magistrate judge explained the outcome would be the same if, as argued by the parties, the Settlement Agreement transferred both patent and non-patent rights. *Id.* Under *Brulotte* and its progeny, royalty provisions for other non-patent rights which are indistinguishable from royalties for patent rights are precluded. *Id.*

This Court adopted the recommendation of the magistrate judge to the extent that he found Marvel's royalty obligations under the Settlement Agreement ended with the patent. This Court, however, found that the language in paragraph 3 of the Settlement Agreement was, arguably, in keeping with the parties' interpretation that the Settlement Agreement transferred the patent rights and the rights to the toy ideas conveyed by Kimble to Toy Biz by verbal agreement in 1990. This Court did not find it necessary to address the magistrate judge's contrary conclusion because the outcome under *Brulotte* is the same, regardless. (CV 08-372 TUC DCB (Doc. 85): Order t 5-6.)

Following this Court's ruling against Kimble that Marvel's royalty obligations under the Settlement Agreement end when the patent expires, Kimble moved to amend the First Amended Complaint to add a new claim that obligations under the 1990 verbal agreement between the parties survived the expiration of the Kimble patent and to allege a corresponding breach of contract claim. The Motion to Amend the First Amended Complaint was fully briefed, and the Court denied the amendment as untimely and futile. (CV 08-372 TUC DCB (Doc. 90). Subsequently, Marvel filed an action for declaratory judgment in the Southern District of New York that no such claim remained. Kimble filed a Motion for Reconsideration and asked again to add the claim here. The Court denied the Motion for Reconsideration because the case was ready for trial. On February 15, 2011, the parties stipulated to dismiss CV 08-372 TUC DCB and waived all rights to appeal, except for the right of Kimble to appeal this Court's Order granting summary judgment for Marvel on Marvel's counterclaim that its obligation under the royalty provision in the Settlement

Agreement terminated after May 25, 2010, the date of expiration of the Kimble patent. (CV 08-372 TUC DCB (Doc. 122): Order of Dismissal.)

On December 20, 2010, the New York District Court for the Southern District of New York transferred Marvel's action for declaratory relief here. This case, CV 10-792 TUC DCB, was opened on April 9, 2010. Marvel asks this Court to find that there remain no obligations by Marvel to Kimble under the alleged oral agreement of 1990. The question has been fully briefed by the parties in crossmotions for summary judgment.

## B.

### Crossmotions for Summary Judgment: Whether any obligations remain under the alleged 1990 oral agreement.

As a threshold step, the Court must determine whether the contract terms are ambiguous. A contract provision is unambiguous where it has "a definite and precise meaning, unattended by danger of misconception in the purpose of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Chiquita Intern. Ltd. v. Liverpool and London S.S. Protection and Indem. Ass'n Ltd.*, 124 F.Supp.2d 158, 164 (S.D.N.Y.,2000) (quoting *Sayers v. Rochester Telephone Corp.,* 7 F.3d 1091, 1095 (2d Cir. (N.Y.) 1993)). A contract is not ambiguous merely because the parties argue for different interpretations, nor where the interpretation urged by one party strains the contract language beyond its reasonable and ordinary meaning. *Id.* (citing *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.(N.Y.) 1989)).

Contract language is ambiguous if it is " 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " *Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1095 (2nd Cir. (N.Y.) 1993) (quoting *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2d Cir. (N.Y.) 1987) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.,* 284 F.Supp. 987, 994 (S.D.N.Y.1968)). In assessing ambiguity, we consider the entire

contract to "safeguard against adopting an interpretation that would render any individual provision superfluous." *RJE Corp. v. Northville Industries Corp.*, 329 F.3d 310, 314 (2nd Cir. (N.Y.) 2003) (quoting *Sayers,* 7 F.3d at 1095)).

The second step, construction of an <u>unambiguous</u> contract, is a matter of law, and the intention of the parties may be gathered from the four corners of the instrument and should be enforced according to its terms. *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324, 865 N.E.2d 1210, 1213-1214 (N.Y. 2007) (citations omitted). The court should "construe the agreements so as to give full meaning and effect to the material provisions" *Id.* (quoting *Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.,* 3 N.Y.3d 577, 582, 822 N.E.2d 768 (2004)). A reading of the contract should not render any portion meaningless, *id.* (citations omitted), and a contract should be "read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose" *Id.* at 324-325 (quoting *Matter of Westmoreland Coal Co. v. Entech, Inc.,* 100 N.Y.2d 352, 358, 794 N.E.2d 667 (2003)).

The history of the 2001 Settlement Agreement reflects that the parties entered into the agreement to settle all issues, patent and contract, in order "'to avoid the further expense and distraction of litigation.'" (CV 08-372 TUC DCB (Doc. 77): R&R at 9 (quoting Doc. 47-3 at 2, ¶ E)). "To that end, the Agreement included a royalty for certain toys, infringing or not." *Id.* In other words, the Settlement Agreement covered Web Blaster toys, infringing or not– not any specifically identified Web Blaster toy. The history of the Settlement Agreement supports the parties' presentation to this Court on summary judgment motions in CV 08-372 TUC DCB that the Settlement Agreement covered both patent rights and the rights to the toy ideas verbally exchanged between Kimble and Toy Biz in 1990. With this purpose in mind, the Court, again, takes a look at the terms of the Settlement Agreement.

Paragraph 3 expressly states "Marvel agrees to purchase . . . and Patent Holders agree to sell . . . the Patent. . . . " As noted by the magistrate judge, clearly Kimble transferred the patent rights to Marvel. Paragraph 3 continues, "The purchase price of the Patent shall be payable . . . as follows:" a) $516,214.62 upon execution and delivery of the Agreement and

b) 3% of "net product sale" deemed to "include product sales that would infringe the Patent but for the purchase and sale thereof pursuant to this Agreement as well as sales of the Web Blaster product that was the subject of the Action to which the Judgment refers." As noted by the magistrate judge, the royalty obligations under the 2001 Settlement Agreement covered two categories of toys: 1) infringing toys, i.e., toys covered by the patent, and 2) Web Blaster toys which were the subject of previous litigation, i.e., role-play toys that allow the user to adopt aspects of Marvel's Spider-Man character by shooting foam string). (CV 08-372 TUC DCB (Doc. 77): R&R at 7.)

The other relevant portions of the 2001 Settlement Agreement are as follows:

¶ 9.    Except for the obligations undertaken by Marvel in this Agreement and except for those obligations under the alleged verbal agreement that was the subject of the Action, the Patent Holders hereby release and discharge Marvel . . . from all actions, causes of action, suits, debts, sums of money, accounts, covenants, contracts, controversies, agreements, promises, damages, claims and demands whatsoever, . . ., which against Releasee [Marvel], the Patent Holders . . ., now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Agreement.

¶ 12.   This Agreement contains the entire agreement among the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous arrangements or understandings with respect thereto.

The exceptions from the broad-sweeping release provisions in paragraph 9 coincide with the obligation provisions in paragraph 3. The release provisions in paragraph 9 are quite clearly designed to release Marvel of all obligations except the promises undertaken in paragraph 3 to pay royalties on two types of products: patented Web Blaster products and non-patent Web Blaster products.

Kimble submits that the purpose of paragraph 9 was to insure that if Marvel made a toy in the future, Kimble retained the right to argue that it was not the toy that was litigated and did not infringe the patent and, therefore, not covered by the Settlement Agreement. Paragraph 9 also insured that Kimble retained the right to argue that a new toy was covered by either the Settlement Agreement or the verbal agreement. According to Kimble, the Settlement Agreement only obligated Marvel to pay royalties on toys covered by the patent and the toy that was litigated in 1997. Marvel has denied that the Ultimate Web Blaster toy

either infringes the patent or was the toy that was litigated and, therefore, denies any obligation to make any payments for this toy. Kimble argues paragraph 9 was designed precisely for this type of toy and allows Kimble to sue on the verbal agreement in this situation.

Marvel argues that this case is analogous to the situation where A agrees to buy a widget from a retailer for $100. Once A pays the retailer for the widget, the retailer provides A with a receipt as proof of payment, not a release. A's obligation is discharged once he pays the retailer.

The Court agrees with Marvel's interpretation of the Settlement Agreement. The 1990 verbal agreement provided for Kimble to disclose ideas he had for Spiderman role playing toys that shot foam string in exchange for Marvel's promise to negotiate a reasonable royalty rate prior to using any of his ideas. (CV 10-792 TUC DCB: Answer/Counterclaim at ¶ 19 (Doc. 20)). In 1997, Kimble alleged that Marvel produced and sold a Web Blaster toy without negotiating any royalty. Accordingly, Marvel's obligation under the verbal agreement was discharged by the 2001 Settlement Agreement once Marvel performed by paying the negotiated royalties.

Paragraph 3 reflects the purpose of the 2001 Settlement Agreement, which was to transfer the Web Blaster patent rights to Marvel and provide reasonable royalties for such patented Web Blaster toys and the Web Blaster toy ideas verbally exchanged between Kimble and Toy Biz in 1990.

In paragraph 9, Kimble expressly released and discharged Marvel from "all actions, causes of action, suits, debts, sums of money, accounts, covenants, contracts, controversies, agreements, promises, damages, claims and demands whatsoever," against Marvel by Kimble, which Kimble had at the time or thereafter, "shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of [the] Agreement." In paragraph 12, the parties agreed that the Settlement Agreement contained the entire agreement among the parties with respect to the subject matter hereof

and superseded all prior and contemporaneous arrangements or understandings with respect thereto.

The Court finds when considered together there is no ambiguity in the terms of the 2001 Settlement Agreement, which superseded all prior agreements between the parties including the alleged verbal agreement at issue in the present action. Because the provisions of the Settlement Agreement are not ambiguous, the intention of the parties may be gathered from the four corners of the instrument and interpretation of the Settlement Agreement is a question of law and within the province of the Court. *Unisys Corp. v. Hercules Inc.*, 224 A.D.2d 365, 367, 638 N.Y.S.2d 461, 463 (N.Y. A.D. 1 Dept., 1996). The Federal Rules of Civil Procedure, Rule 56(a), provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986), *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 475, 586-87 (1986).

The Court grants declaratory judgment for Marvel finding that to the extent, if any, the alleged verbal agreement between the parties in 1990 was valid and enforceable, Marvel satisfied any obligation it may have had thereunder by virtue of having negotiated and entered into the 2001 Settlement Agreement, and any rights or obligations of the parties under the alleged verbal agreement were superseded by the 2001 Settlement Agreement.

There is no need for the Court to reach Marvel's other arguments that Kimble's claim is barred by *res judicata* or a six-year statute of limitations period, or that if any obligations remain under the verbal agreement, such obligations are unenforceable under *Brulotte*.

**Accordingly,**

**IT IS ORDERED** that Marvel's request for oral argument is DENIED because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions and oral argument would not have aided the court's decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999) (explaining that if

the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

**IT IS FURTHER ORDERED** that Marvel's Motion for Summary Judgment (Doc. 22) is GRANTED.

**IT IS FURTHER ORDERED** that Kimble's Motion for Summary Judgment (Doc 33) is DENIED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter a Declaratory Judgment for Plaintiff that 1) to the extent, if any, the alleged verbal agreement between the parties in 1990 was valid and enforceable, Marvel satisfied any obligation it may have had thereunder by virtue of having negotiated and entered into the 2001 Settlement Agreement, and 2) any rights or obligations of the parties under the alleged verbal agreement were superseded by the 2001 Settlement Agreement.

DATED this 19th day of January, 2012.

David C. Bury
United States District Judge